RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0051p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
─────────────────

MISTY COLEMAN,

　　　　　　　　　　*Plaintiff-Appellant*,

　　*v.*

HAMILTON COUNTY BOARD OF COUNTY COMMISSIONERS,
CHARMAINE MCGUFFEY; BETHANIE DREW; COLINA
YATES; MORGAN BOLEN; TIMOTHY SCHOLZ; FRITZ
ELSASSER; NAPHCARE, INC.; MICHAEL J. PEGRAM, JR.;
LAUREN A. SLACK; JENNA N. WARD; DONALD L. HAUN,

　　　　　　　　　　*Defendants-Appellees*.

No. 24-3453

─────────────────

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.
No. 1:22-cv-00319—Matthew W. McFarland, District Judge.

Argued:  December 11, 2024

Decided and Filed:  March 7, 2025

Before:  SUTTON, Chief Judge; BUSH and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Lydia A. Caylor, CORS & BASSETT, LLC, Cincinnati, Ohio, for Appellant.
James S. Sayre, HAMILTON COUNTY PROSECUTING ATTORNEY'S OFFICE, Cincinnati,
Ohio, for the Hamilton County Appellees. Michael P. Foley, RENDIGS, FRY, KIELY &
DENNIS, LLP, Cincinnati, Ohio, for the NaphCare Appellees.  **ON BRIEF:** Lydia A. Caylor,
CORS & BASSETT, LLC, Cincinnati, Ohio, for Appellant.  James S. Sayre, HAMILTON
COUNTY PROSECUTING ATTORNEY'S OFFICE, Cincinnati, Ohio, for the Hamilton
County Appellees. Michael P. Foley, RENDIGS, FRY, KIELY & DENNIS, LLP, Cincinnati,
Ohio, for the NaphCare Appellees.

—————————

**OPINION**

—————————

MURPHY, Circuit Judge.  Misty Coleman alleges that she fell and broke her ankle after slipping on the wet shower floor of a county jail.  This accident led Coleman to pursue constitutional claims under 42 U.S.C. § 1983 and negligence claims under Ohio law against the county and many corrections officers and medical personnel.  The district court dismissed all claims against all parties.  Coleman's appeal raises a mix of substantive and procedural questions.  As for the substantive: Did Coleman adequately allege that the slippery shower violated the Due Process Clause?  Did she adequately allege that a county policy or custom was behind her poor medical care?  And may the county invoke state-law immunity from her negligence claim at the pleading stage?  As for the procedural: When did Coleman's claims accrue and start the running of the statute of limitations?  Did her amended complaint (which named actual corrections officers and medical personnel) "relate back" to the date of her original complaint (which named "John Doe" and "Jane Doe" defendants) for statute-of-limitations purposes?  And can Coleman rely on equitable tolling to delay the running of the limitations period?  We agree with the district court on the answers to all six questions.  We thus affirm its dismissal of Coleman's complaint.

I

Coleman's complaint asserts a mix of factual allegations and legal conclusions.  At the pleading stage, we must accept the truth of the alleged facts but not the legal conclusions about those facts.  *See Rudd v. City of Norton Shores*, 977 F.3d 503, 511–12 (6th Cir. 2020).

In June 2020, the authorities took Coleman into custody on unidentified charges and confined her at the Hamilton County Justice Center in Cincinnati, Ohio.  2d Am. Compl., R.28, PageID 225.  The Hamilton County Sheriff's Office runs this jail.  *Id.*  On June 18, corrections officers escorted Coleman to the jail showers.  *Id.*  As Coleman exited, she slipped and fell on the wet floor.  *Id.*  Coleman fractured her left ankle.  *Id.*  The jail administrators had provided Coleman with what she describes as "inappropriate" and "unsafe" flip-flops to take a shower.

*Id.*, PageID 225–26.  Her complaint alleges that this footwear "exacerbated" the "dangerous condition" of the wet shower floor.  *Id.*  It adds that the "slippery and dangerous condition" of that wet floor was "hidden" from her.  *Id.*, PageID 226.  And it says that the Hamilton County Sheriff and the various corrections officers working on the day of her accident knew of this risky condition.  *Id.*  In fact, unknown officers told her that other inmates had also slipped and fallen. *Id.*

Coleman requested immediate medical aid after her fall.  *Id.*  NaphCare, a private company, had contracted with Hamilton County to provide medical care to inmates.  *Id.*, PageID 222–23.  The officers watching Coleman notified NaphCare employees of Coleman's injuries. *Id.*, PageID 226–27.  These private employees moved her to the "medical area in a wheelchair." *Id.*, PageID 227.  Coleman had an open cut and "significant swelling and bruising" at this time. *Id.*  She also complained of "excruciating pain" to the NaphCare medical personnel.  *Id.*  But they only gave her "an ice pack and ibuprofen."  *Id.*  The employees otherwise kept her untreated in a "holding cell" for about four hours.  *Id.*  When another corrections officer discovered a "visibly distraught" Coleman in this cell, the officer ordered the NaphCare personnel to properly treat her.  *Id.*  Coleman's broken ankle eventually required surgery.  *Id.*, PageID 229.

In May 2022, almost two years after this accident, Coleman sued the following defendants in state court: the Hamilton County Board of Commissioners, the Hamilton County Sheriff's Office, the current sheriff, the former sheriff at the time of her injury, two "John/Jane Doe" corrections officers, and two "John/Jane Doe" nurses.  Compl., R.2, PageID 20–22.  After a defendant removed the suit to federal court, Coleman filed an amended complaint that alleged constitutional claims under 42 U.S.C. § 1983 and negligence claims under Ohio law.  1st Am. Compl., R.7, PageID 63–64.  She asserted that the defendants had violated the Eighth and Fourteenth Amendments and had acted negligently both by allowing the slippery conditions in the jail showers and by failing to properly treat her injuries after her fall.  *See id.*, PageID 59–64.

The district court dismissed most of these claims.  *Coleman v. Hamilton Cnty. Bd. of Cnty. Comm'rs*, 2023 WL 4466855, at *6 (S.D. Ohio July 11, 2023).  It dismissed the claims against the sheriff's office because that office lacked the capacity to be sued.  *See id.* at *2.  It dismissed the claims against the former sheriff because Coleman had sued him only in his

official capacity, but he no longer held the office. *See id.* at *3. It treated the § 1983 claims against the Board and the current sheriff as claims against Hamilton County because Coleman had also sued them in their official capacities. *Id.* And to state a claim against the county under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), Coleman had to allege that an unconstitutional county policy or practice caused her injuries. *See Coleman*, 2023 WL 4466855, at *3. She failed to do so. The court held that her claims challenging the slippery conditions did not allege a plausible constitutional violation. *Id.* at *4. It next held that she failed to allege that Hamilton County had a policy or practice of providing inadequate medical care. *Id.* Turning to the negligence claim, the court held that Ohio law would grant immunity to Hamilton County on the alleged facts. *See id.* at *4–5. That said, the court did not dismiss the case in its entirety. It allowed Coleman "to conduct limited discovery" to identify the unnamed officers and nurses. *See id.* at *5–6.

Coleman later filed a second amended complaint. During the litigation, she learned of Hamilton County's contract with NaphCare. She thus brought NaphCare and four of its medical staff into the suit. 2d Am. Compl., R.28, PageID 222–23. She also sued five Hamilton County corrections officers who had worked at the jail on the date of her accident. *Id.*, PageID 221–22.

Hamilton County and the corrections officers moved to dismiss the complaint. NaphCare and its employees moved for judgment on the pleadings. The court granted both motions and dismissed the complaint for good. *Coleman v. Hamilton Cnty. Bd. of Cnty. Comm'rs*, 2024 WL 1897559, at *5 (S.D. Ohio Apr. 30, 2024). It held that the two-year statute of limitations barred the claims against these new defendants because Coleman filed the complaint adding them over two years after she suffered her accident in June 2020. *See id.* at *2–4.

Coleman appealed. We review a decision granting a motion to dismiss and for judgment on the pleadings de novo. *See Rudd*, 977 F.3d at 511.

## II. Claims Against Hamilton County

Coleman first challenges the dismissal of her constitutional and negligence claims against the current Hamilton County Sheriff and Board of County Commissioners. Because Coleman sued these parties in their official capacities, she effectively sued Hamilton County itself under

§ 1983 and Ohio law.  *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Lambert v. Clancy*, 927 N.E.2d 585, 591 (Ohio 2010).  But she has failed to plausibly plead either claim against the county.

## A.  Constitutional Claim

Section 1983 allows Coleman to sue any "person" that "subjects" her to the "deprivation" of a constitutional right.  42 U.S.C. § 1983.  Ever since *Monell*, the Supreme Court has held that the word "person" includes municipalities like Hamilton County.  436 U.S. at 690–95.  To allege a *Monell* claim against the county, Coleman must allege facts that "plausibly suggest" two things.  *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009); *see Susselman v. Washtenaw Cnty. Sheriff's Off.*, 109 F.4th 864, 873–74 (6th Cir. 2024).  She must first allege that her injuries arose from an unconstitutional act.  *See Dibrell v. City of Knoxville*, 984 F.3d 1156, 1160 (6th Cir. 2021).  She must then "connect" that act to a county policy or custom.  *Gambrel v. Knox County*, 25 F.4th 391, 408 (6th Cir. 2022); *see Connick v. Thompson*, 563 U.S. 51, 60–61 (2011).

Coleman's attempt to satisfy the first requirement gets off to a shaky start because she does not identify the provision of the Constitution on which she relies.  Her complaint cited both the Eighth Amendment's ban on "cruel and unusual punishments" and the Fourteenth Amendment's ban on the deprivation of "liberty" "without due process of law."  U.S. Const. amends. VIII, XIV, § 1.  But the Eighth Amendment applies only to prisoners who have been sentenced for a crime, whereas the Fourteenth Amendment protects pretrial detainees who await their trial.  *See Lawler ex rel. Lawler v. Hardeman County*, 93 F.4th 919, 926 (6th Cir. 2024).  In recent years, we have adopted a more lenient test for pretrial detainees than for convicted prisoners.  *See id.* at 927.  Yet Coleman's complaint does not allege whether she was a convicted prisoner or a pretrial detainee at the time of her accident.  How should a court resolve a motion to dismiss when a complaint's allegations do not state enough facts to reveal the constitutional right at stake?  We can save this question for another day.  Coleman's counsel stated at oral argument that the jail held her as a pretrial detainee.  Because she cannot satisfy the more lenient test that this outside-the-complaint statement triggers, we will assume that we may rely on the statement to resolve the uncertainty.

Corrections officers must protect convicted prisoners from harm under the Eighth Amendment, and they must protect pretrial detainees from harm under the Due Process Clause. *See id.* at 926. An inmate can suffer harm in varying ways. *See Phillips v. Tangilag*, 14 F.4th 524, 534 (6th Cir. 2021). Other detainees might assault the inmate. *See id.* The inmate might encounter a health problem that needs medical care. *See id.* Or a dangerous condition in the jail might injure the inmate. *See id.* To establish an officer's liability for this harm, our traditional Eighth Amendment test requires inmates to prove that an officer acted with "deliberate indifference" to the risk that the harm would come about. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991). That test contains both objective and subjective elements. *See Phillips*, 14 F.4th at 534. The risk of harm must rise to a "sufficiently serious" level as an objective matter. *Id.*; *see Wilson*, 501 U.S. at 298. And the officer must act with a "sufficiently culpable" mental state as a subjective matter. *Farmer*, 511 U.S. at 834 (citation omitted). Our recent due-process test (the one applicable in Coleman's case) follows the same framework, except it adopts a less demanding subjective element. *See Lawler*, 93 F.4th at 927.

Turning to the other *Monell* requirement, Coleman must do more than show a due-process violation because § 1983 does not permit her to hold Hamilton County vicariously liable for its employees' conduct. *See Connick*, 563 U.S. at 60. She must instead prove that the violation arose from one of Hamilton County's policies or customs. An inmate can allege this type of policy or custom in different ways. Perhaps the county adopted "official policies" that sanctioned the unconstitutional risk of harm. *Gambrel*, 25 F.4th at 408. Or perhaps the county's training policies failed to adequately teach corrections officers about how to avoid the unconstitutional failure to protect inmates. *See id.*; *see also Connick*, 563 U.S. at 61. Or maybe the county had a custom of ratifying prior unconstitutional failures to protect and thereby encouraged officers to commit future violations. *See Pineda v. Hamilton County*, 977 F.3d 483, 494–95 (6th Cir. 2020).

Coleman's complaint attempts to meet these *Monell* standards by alleging two distinct constitutional violations. She first alleges that Hamilton County disregarded the risk of harm from the slippery shower. She next alleges that the medical personnel provided constitutionally

inadequate medical care after she slipped and broke her ankle. But her first argument fails to allege a constitutional violation, and her second one fails to connect any alleged violation to the county.

*Slippery Floor.* Coleman's complaint does not "plausibly suggest" that the conditions of the jail shower violated the Due Process Clause. *Iqbal*, 556 U.S. at 680. We need not discuss the subjective element of this claim (the one relaxed by our recent precedent) because she cannot satisfy the objective element. That element requires Coleman to allege more than the unreasonable risk of harm that might establish a negligence claim. *See Lamb v. Howe*, 677 F. App'x 204, 208–09 (6th Cir. 2017); *see also Phillips*, 14 F.4th at 535. Rather, Coleman must allege facts showing that the risk of harm deprived her of "the minimal civilized measure of life's necessities[.]" *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). But she has not made that showing because the risk that shower floors will be slippery exists for all showers—whether located inside or outside a jail's walls. *See Lamb*, 677 F. App'x at 209; *see also Pyles v. Fahim*, 771 F.3d 403, 410 (7th Cir. 2014); *Coleman v. Sweetin*, 745 F.3d 756, 764–65 (5th Cir. 2014) (per curiam); *Reynolds v. Powell*, 370 F.3d 1028, 1031–32 (10th Cir. 2004); *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993). An ordinary risk that every member of the public faces everyday falls well below what is required to show an unconstitutional risk for inmates.

To be sure, we have suggested in dicta that slippery shower floors when combined with "exacerbating factors" (such as the fact that a "disabled" inmate "had to use crutches") can establish an objectively intolerable risk of harm. *Lamb*, 677 F. App'x at 209. But Coleman's proposed exacerbating factors—that she had to wear "inappropriate" and "unsafe" flip flops and that other inmates had fallen in the past—do not resemble the types of factors that we have opined might suffice. 2d Am. Compl., R.28, PageID 225–26. Jails provide shower footwear to (among other things) reduce the risk of slipping, and Coleman offers no factual details to support her "legal conclusions" that her flip flops were either inappropriate or unsafe. *Iqbal*, 556 U.S. at 678. Further, the unknown number of prior accidents, at most, might suggest that the jail had negligently maintained the shower facilities. *See Coleman*, 745 F.3d at 759, 764–65. These factors do not establish that a non-slippery shower floor qualifies as one of the "minimal

civilized measure[s] of life's necessities" that inmates cannot go without. *Rhodes*, 452 U.S. at 347.

*Medical Care.* Coleman's complaint next fails to tie the purportedly inadequate medical care that she received after her fall to a Hamilton County policy or custom. *See Connick*, 563 U.S. at 60–61. Her complaint does not allege that Hamilton County had an official policy of mistreating injured inmates. And the complaint identified only her "single instance" of neglect, which alone does not plausibly allege a continuous custom of tolerating inadequate care. *Franklin v. Franklin County*, 115 F.4th 461, 472 (6th Cir. 2024) (citation omitted). Indeed, Coleman's opening brief did not even identify this additional element of a *Monell* claim—let alone describe the theory on which she relied to hold the county liable. She thus forfeited any potentially applicable *Monell* theories. *See Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 881–82 (6th Cir. 2024).

## B. Negligence Claim

Coleman's negligence claim against Hamilton County fares no better. Ohio grants its political subdivisions immunity from damages claims arising out of a "governmental or proprietary function." Ohio Rev. Code § 2744.02(A)(1); *see Rankin v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 889 N.E.2d 521, 523–25 (Ohio 2008). But this state law contains exceptions. It does not grant immunity if a plaintiff's claim arises from negligent driving, the negligent maintenance of public roads, the negligent performance of a proprietary function, or a physical defect in a public building. *See* Ohio Rev. Code § 2744.02(B)(1)–(4). That said, the exception for physical defects in public buildings expressly excludes jails from its reach. *Id.* § 2744.02(B)(4). And the operation of a jail qualifies as a "government" function, so it falls outside the exception for negligently performing a proprietary function. *Id.* § 2744.01(C)(2)(h). Coleman thus does not argue that her negligence claim could plausibly fall within any exception to immunity.

Then how does she seek to salvage this claim? She suggests that Ohio *state* courts would not permit Hamilton County to invoke its immunity defense at this stage under Ohio's pleading rules. She likely misconstrues Ohio law. *Cf. Carelli v. Canfield Loc. Sch. Dist. Bd. of Educ.*,

126 N.E.3d 1232, 1238 (Ohio Ct. App. 2019).  Regardless, state pleading rules are beside the point in federal court.  We must follow the pleading standards in Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) even for state claims.  *See Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 613–14 (6th Cir. 2024); *see also Shady Grove Orthopedic Assocs. v. Allstate Ins.*, 559 U.S. 393, 398 (2010).  And these Civil Rules permit courts to invoke an immunity defense at the pleading stage if a complaint's allegations show the defendant's entitlement to immunity. *See Crawford v. Tilley*, 15 F.4th 752, 763–66 (6th Cir. 2021); *see also Carmichael v. City of Cleveland*, 571 F. App'x 426, 435–36 (6th Cir. 2014).  This federal pleading principle dooms Coleman's negligence claim because, again, she has not even tried to fit that claim within any immunity exception.

### III.  Claims Against NaphCare and Individual Defendants

Coleman next challenges the statute-of-limitations dismissal of her constitutional and negligence claims against NaphCare, the four NaphCare employees, and the five Hamilton County corrections officers.  She added these defendants when she filed her second amended complaint in September 2023.  But Ohio's two-year statute of limitations for personal-injury suits applies to her § 1983 and negligence claims against these parties.  *See* Ohio Rev. Code § 2305.10(A); *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (en banc).  Because Coleman's complaint alleges that her slip-and-fall accident occurred in June 2020, her own allegations suggest that she filed the claims outside this limitations period.  *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).  Coleman nevertheless offers three reasons why she timely filed the claims.  Her arguments require us to consider three questions: When did the claims accrue?  Did the claims "relate back" to her original complaint?  And should we equitably toll the limitations period?

### A.  When Did Coleman's Claims Accrue?

The statute of limitations did not begin to run until Coleman's claims accrued.  *See Manuel v. City of Joliet*, 580 U.S. 357, 370 (2017).  Coleman argues that her claims against NaphCare and its employees accrued not on the date that she slipped and fell (in June 2020) but on the date that she discovered their identities (in October 2022).  The latter date would render

Coleman's federal and state claims timely. But she misunderstands the accrual rules that govern those claims.

*Federal Claims.* Although § 1983 incorporates the most analogous *state* statute of limitations, courts determine the accrual date of § 1983 claims using *federal* standards. *See Reguli v. Russ*, 109 F.4th 874, 879 (6th Cir. 2024) (per curiam). And although the Supreme Court has presumptively followed what has been called an "occurrence" rule for § 1983 claims, our cases have presumptively followed a "discovery" rule for those claims. *See id.* (citations omitted). The occurrence rule starts the limitations period on the first day that a plaintiff has a complete cause of action; the discovery rule delays this start date until the plaintiff discovers basic facts about the claim. *See id.* As we have done in past cases, we can assume that the more plaintiff-friendly discovery rule applies here because the difference does not matter to the outcome. *See id.* at 883.

Even still, our § 1983 cases leave unclear what this discovery rule requires plaintiffs to have "discovered" to trigger the limitations period. Many of those cases suggest that the limitations period starts when a "plaintiff knows or has reason to know of the *injury* which is the basis of his action." *Id.* at 882 (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)). In another § 1983 case, though, we suggested that the limitations period does not start until a plaintiff knows or should know of "both his *injury* and the *cause* of that injury." *Id.* (quoting *Bishop v. Child.'s Ctr. for Developmental Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010)). Which one of these discovery-rule tests adopts the right approach (assuming the discovery rule applies at all)? On this issue too, we need not reconcile our conflicting caselaw to decide this case. *See id.* at 883.

Even if the discovery rule requires knowledge of both the injury and its cause, Coleman's complaint shows that her § 1983 claims accrued on the date of her accident. Start with her injuries. She knew of her physical harm immediately after she fell because she "had plainly visible injuries including an open wound on her left ankle and significant swelling and bruising." 2d Am. Compl., R.28, PageID 227. She also knew that she received little medical care "for approximately four (4) hours" after this accident despite "her complaints of excruciating pain and requests for medical help" from the four NaphCare employees. *Id.* Turn to the causes of

these injuries. Immediately after she hurt her ankle, she knew that "the slippery and dangerous condition of the shower caused" her fall. *Id.*, PageID 225. And she knew that the four NaphCare employees had failed to treat her during the four hours that she suffered through the pain. *Id.*, PageID 227.

In response, Coleman counters with a single argument: that she could not have known of the "cause" of her injuries to trigger the statute of limitations until she learned the identities of the medical personnel who failed to treat her and their affiliation with NaphCare rather than Hamilton County. She is mistaken. To start, our § 1983 caselaw has already rejected claims that plaintiffs must know the "identity" of the defendants who harmed them to start the statute of limitations under the discovery rule. *Miller v. Cocke County*, 2022 WL 103143, at *2 (6th Cir. Jan. 11, 2022); *see Ruiz-Bueno v. Maxim Healthcare Servs., Inc.*, 659 F. App'x 830, 834 (6th Cir. 2016); *Dowdy v. Prison Health Servs.*, 21 F. App'x 433, 434–35 (6th Cir. 2001) (order). The injury itself should put plaintiffs on notice of the need to investigate the identities of the culprits to "protect" their rights. *Miller*, 2022 WL 103143, at *2. And if those culprits attempt to hide, courts can fix that "problem" on the backend through tolling doctrines like fraudulent concealment. *See id.* at *3.

To be sure, these cases applied the version of the discovery rule that asks only about a plaintiff's injury, not its cause. *See id.* at *2. Might it make a difference if we look to the alternative version of the rule that considers both an injury and its cause? *See Bishop*, 618 F.3d at 536; *see also Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 701–04 (6th Cir. 2022). Not at all. These cases adopt this more forgiving discovery rule based on a Supreme Court precedent interpreting the Federal Tort Claims Act. In *United States v. Kubrick*, 444 U.S. 111 (1979), the Court held that a medical-malpractice claim accrued once a plaintiff had learned of his injury (hearing loss) and its cause (the use of a certain antibiotic after surgery)—even if the plaintiff had not learned that the use of the antibiotic was likely negligent. *See id.* at 118–24. When it used the "cause" language, then, the Court meant the physical force that produced the hearing loss: the antibiotic (rather than some other agent). *See id.* Nothing in *Kubrick* suggested that the plaintiff could have avoided the statute of limitations by claiming "that he did not know which physician had prescribed or administered" that antibiotic. *Cent. States, Se. & Sw. Areas Pension*

*Fund v. Navco*, 3 F.3d 167, 171 (7th Cir. 1993) (Easterbrook, J.), *overruled on other grounds by Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192 (1997). And many decisions since *Kubrick* have rejected the argument that plaintiffs did not know the "cause" of an injury simply because they did not know that the responsible parties worked for the federal government. *See Garza v. U.S. Bureau of Prisons*, 284 F.3d 930, 935 (8th Cir. 2002); *Gould v. U.S. Dep't of Health & Hum. Servs.*, 905 F.2d 738, 743 & n.2 (4th Cir. 1990) (en banc); *Zeleznik v. United States*, 770 F.2d 20, 23 (3d Cir. 1985). Even under Coleman's favored version of the discovery rule, then, she did not need to know the names of the NaphCare employees or their affiliation with that company. It was enough that she knew that they had caused her delayed care.

We end with a disclaimer: § 1983 plaintiffs cannot hold private companies like NaphCare vicariously liable for the acts of their employees. *See Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012). Instead, plaintiffs must show that their injuries arose out of a private company's policy or custom (such as its failure to train its employees). *See id.* Perhaps Coleman could have argued that she did not know of this distinct failure-to-train "cause" even if she immediately knew of the NaphCare employees' failure to treat her. *Cf. Snyder-Hill*, 48 F.4th at 703–04. But we need not resolve this issue now because Coleman did not make this argument or even allege any NaphCare custom or policy. She has thus forfeited the issue. *See Blick*, 105 F.4th at 881–82.

*State Claims.* A simpler analysis shows that Coleman's negligence claims accrued on the same date of her accident. State law (not federal law) determines the accrual date of state claims in federal court. *See Modern Holdings, LLC v. Corning, Inc.*, 2024 WL 4287900, at \*3 (6th Cir. Sept. 25, 2024) (citing cases). And Ohio's legislature has presumptively set an occurrence rule for most personal-injury claims: "a cause of action accrues [for those claims] when the injury or loss to person or property occurs." Ohio Rev. Code § 2305.10(A). The legislature has also adopted a few exceptions to this presumptive rule that delay the accrual date for certain injuries that take time to manifest themselves. *See id.* § 2305.10(B)(1)(5). But Coleman does not try to invoke any of these statutory exceptions. So her negligence claim accrued on the day of her accident and injury under the plain text of Ohio Revised Code § 2305.10(A).

Coleman responds that the Ohio Supreme Court has imposed a judge-made discovery rule for personal-injury claims on top of the text of Ohio Revised Code § 2305.10(A). *See Schmitz v. Nat'l Collegiate Athletic Ass'n*, 122 N.E.3d 80, 85–86 (Ohio 2018); *O'Stricker v. Jim Walter Corp.*, 447 N.E.2d 727, 732 (Ohio 1983). But this judge-made exception to the statute's text also does Coleman no good. It triggers the limitations period when plaintiffs know or should know that they have "suffered a cognizable injury." *Schmitz*, 122 N.E.3d at 86. Coleman should have known of such an injury on the day of her accident. On that date, she both had a "known injury" and believed "that her treating medical professional[s] [had] done something wrong" by failing to care for her. *Id.* at 87–88. This knowledge and belief triggered the limitations period under Ohio law. *See id.*

### B. Did Coleman's Claims "Relate Back" To Her Original Complaint?

Because Coleman's claims accrued in June 2020, she timely filed her *original* complaint in May 2022. So Coleman next argues that her second amended complaint "relates back" to this original one under Federal Rule of Civil Procedure 15. If so, she could use the initial complaint's filing date for her later pleading. And Coleman points out that the earlier date would render her claims timely even against the parties (NaphCare, its employees, and the five corrections officers) that she sued later. Yet this theory misapplies Rule 15's relation-back doctrine.

Rule 15(c) provides that "[a]n amendment to a pleading relates back to the date of the original pleading" in several circumstances. Fed. R. Civ. P. 15(c)(1). As relevant here, an amended complaint that "changes the party or the naming of the party against whom a claim is asserted" will relate back to the date of the original complaint if the amendment satisfies four criteria. Fed. R. Civ. P. 15(c)(1)(C); *see Schiavone v. Fortune*, 477 U.S. 21, 29 (1986). The amended complaint must pursue a claim that arose out of the same "conduct, transaction, or occurrence" as the claim in the original complaint. Fed. R. Civ. P. 15(c)(1)(B), (C). The party added by the amended complaint must have "received such notice of the action that it will not be prejudiced in defending on the merits[.]" Fed. R. Civ. P. 15(c)(1)(C)(i). And this party must have learned (or should have learned) "that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). Lastly, the

new party must have received the required notice and learned the required information within the period for serving the original complaint.  Fed. R. Civ. P. 15(c)(1)(C) (citing Fed. R. Civ. P. 4(m)).

We can resolve this case under the third requirement: that a newly named party "knew or should have known that the action would have been brought against it, but for a *mistake* concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C)(ii) (emphasis added).  Coleman asserts that her original complaint made a "mistake" because it used "John Doe" and "Jane Doe" placeholders for the Hamilton County corrections officers and NaphCare employees that her amended complaint added.  But what was her "mistake"?  The Supreme Court has read that word to convey what any ordinary person would understand it to mean: "[a]n error, misconception, or misunderstanding; an erroneous belief."  *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010) (quoting *Black's Law Dictionary* 1092 (9th ed. 2009)).  And, as we have held for decades, plaintiffs do not commit an "error" or have a "misconception" when they recognize that they do not know the name of a defendant and use a "John Doe" placeholder instead.  *Id.*; *see Zakora v. Chrisman*, 44 F.4th 452, 481–82 (6th Cir. 2022); *Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012); *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996).  These types of "known unknowns, in the happy phrase coined by Secretary of Defense Donald Rumsfeld," do not qualify as mistakes because an "absence of knowledge" is different from an error in knowledge.  *Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009); *Zakora*, 44 F.4th at 482.  Coleman thus cannot rely on the relation-back doctrine because she cannot show the required error for any of the newly added defendants.

Coleman's responses fall short.  As for the newly added corrections officers, she can muster only the conclusory claim that "issues of fact" exist over whether she made a mistake.  Reply Br. 5.  But she does not identify those issues.  And we have said as a matter of law that the use of a placeholder name does not qualify as a valid mistake.  *See Zakora*, 44 F.4th at 481–82.

As for the newly added medical personnel, Coleman points out that her original complaint referred to each of the two "John/Jane Doe" nurses "as a Hamilton County Sheriff's Office Employee" rather than a NaphCare employee.  Compl., R.2, PageID 21.  Because she misidentified the employer of the unnamed defendants, this argument goes, she made a

cognizable mistake. Not so. Rule 15 requires Coleman to show that she would have originally sued the new parties "but for" the mistake about their identities. Fed. R. Civ. P. 15(c)(1)(C)(ii). In other words, the mistake must have been a but-for cause of the failure to sue those parties. *See Burrage v. United States*, 571 U.S. 204, 210–12 (2014). Here, though, Coleman's original complaint failed to name the medical personnel not because she wrongly believed that they worked for Hamilton County but because she rightly recognized she did not know their identities. That is, even if she had known their employer from the outset, she still would not have sued them. *See id.* That her original complaint also failed to name the proper corrections officers (even though she accurately identified their employer as Hamilton County) proves this point. So this mistake cannot take Coleman's case outside our general rule that plaintiffs who use "John Doe" placeholders because they do "not know whom to sue" do not commit a mistake under Rule 15. *Smith*, 476 F. App'x at 69.

Admittedly, Coleman might have argued for a different theory of "mistake": that she erroneously sued Hamilton County (the government) rather than NaphCare (the private company) for her *Monell* "claim" challenging the alleged lack of medical care. Fed. R. Civ. P. 15(c)(1)(C). That theory might resemble the type of mistake that the Supreme Court said sufficed in *Krupski*: a mistake about which of two affiliated companies operated the cruise ship on which the plaintiff had been injured. 560 U.S. at 554–55. At the same time, we have indicated that Rule 15(c)(1)(C) does not apply if the plaintiff adds a new defendant (on top of an existing one) and does not simply substitute one defendant for another. *See Zakora*, 44 F.4th at 480. And here, Coleman's amended complaint left Hamilton County in the suit. At day's end, though, we merely flag (and need not resolve) this potential theory because Coleman failed to raise it. *See Blick*, 105 F.4th at 881–82.

One last point. Coleman alternatively argues that Ohio Civil Rule 15(D)—not Federal Rule 15(c)—should govern this relation-back question because she originally sued in state court. The allegedly more forgiving state rule permits a plaintiff who does not know the name of a defendant to use "any name and description" for the defendant and to file an amendment once the plaintiff learns the defendant's name. Ohio Civil Rule 15(D). But the plaintiff's original complaint must still allege that "he could not discover" the defendant's name, and the defendant

must receive personal service. *Id.* Setting aside whether Coleman complied with this state pleading rule, she offers no reasoning why it should apply in federal court other than a bare citation to *Smith*. But *Smith* found her theory "doubtful" on its way to avoiding the issue altogether because the plaintiff could not satisfy the state rule. 476 F. App'x at 70.

We can think of one potential way she might have been able to rely on the state rule: Federal Rule 15 *separately* allows an amendment to relate back to the original complaint if "the law that provides the applicable statute of limitations allows relation back[.]" Fed. R. Civ. P. 15(c)(1)(A). Because Ohio law provided the statute of limitations for Coleman's § 1983 and negligence claims, might Federal Rule 15(c)(1)(A) allow her to invoke the state relation-back rule? *Cf.* 6A Charles A. Wright et al., *Federal Practice and Procedure* § 1503 (3d ed. 2010); *Pac. Emps. Ins. v. Sav-a-Lot of Winchester*, 291 F.3d 392, 400–01 (6th Cir. 2002). The parties did not brief this question. Besides, Coleman did not raise this state-law pleading theory at all in the district court. She has thus forfeited the argument on appeal as well. *See Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011–13 (6th Cir. 2022). Like *Smith*, we can save this issue for another day.

## C. Should We Equitably Toll the Limitations Period?

Coleman lastly seeks to save her claims through equitable tolling. That doctrine sometimes delays the running of the limitations period if a plaintiff can identify a sufficiently good excuse for failing to sue on time. *See Holland v. Florida*, 560 U.S. 631, 649 (2010). Coleman claims that this tolling rule applies here because she diligently tried to identify the responsible parties.

Her argument suffers from two problems: She relies on the wrong procedural standards and the wrong substantive law. To start, Coleman overlooks this case's procedural posture. She argues that the district court had discretion over whether to apply equitable tolling, and she supports her tolling request with outside-the-complaint evidence. Yet this appeal arises from a decision granting a motion to dismiss (or for judgment on the pleadings). So we review the district court's decision de novo and consider only the allegations in the complaint. *See Reguli*, 109 F.4th at 879; *see also Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir.

2020). This procedural posture helps Coleman in a few ways. Because a statute of limitations raises an affirmative defense that a defendant bears the burden of proving, a complaint need not plead facts showing a claim's timeliness. *See Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013); *Cataldo*, 676 F.3d at 547. And because the sufficiency of a complaint raises a legal issue, we review the denial of equitable tolling at this pleading stage with fresh eyes rather than through a deferential lens. *See Wershe v. City of Detroit*, 112 F.4th 357, 365–66 (6th Cir. 2024).

But the procedural posture undermines Coleman's argument in a more significant way. Although plaintiffs need not plead a claim's timeliness, defendants can still move to dismiss a complaint based on the statute of limitations if the complaint affirmatively alleges "facts showing that [the plaintiffs] did not sue in time." *Reguli*, 109 F.4th at 879. And here, Coleman's alleged facts establish that she did not sue within the facially applicable limitations period. *See id.* When plaintiffs "plead themselves out of court" in this way, *id.*, the burden switches to them to allege facts that plausibly "establish an exception to the statute of limitations" (such as equitable tolling). *Lutz*, 717 F.3d at 464 (quoting *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001)); *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008). But Coleman's equitable-tolling arguments on appeal did not contain a single citation to the document that matters: her complaint. *See Gordon v. England*, 354 F. App'x 975, 981 (6th Cir. 2009); *Bishop*, 520 F.3d at 520. She instead cited other materials (or just alleged facts in her appellate brief). If she sought to add more facts to bolster her equitable-tolling argument, she should have moved to amend her complaint. *See Bates*, 958 F.3d at 483–84. We must limit ourselves to that document.

Next, Coleman overlooks the substantive law that applies to her equitable-tolling argument. She invokes the five-part test that we have often used when deciding whether equitable tolling should apply to a *federal* statute of limitations. *See Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998); *see also Wershe*, 112 F.4th at 366. Yet Ohio law governs whether to toll the *state* limitations period governing Coleman's negligence claim. *See Saalim v. Walmart, Inc.*, 97 F.4th 995, 1012 (6th Cir. 2024); *Lutz*, 717 F.3d at 474. And because § 1983 incorporates the statute-of-limitations from the State where the events occurred, federal courts

have also generally looked to state equitable-tolling rules for § 1983 claims. *See Wallace v. Kato*, 549 U.S. 384, 394–95 (2007); *Hardin v. Straub*, 490 U.S. 536, 538–44 (1989); *Wershe*, 112 F.4th at 370–71. Coleman, though, cited no Ohio cases that have equitably tolled the limitations period on her requested grounds. To the contrary, those courts invoke this doctrine "sparingly and only in exceptional circumstances." *Roach v. Vapor Station Columbus, Inc.*, 2022 WL 2211529, at *2 (Ohio Ct. App. 2022). Plaintiffs typically must allege that a defendant "intentionally misled or tricked" them into missing the deadline. *Saalim*, 97 F.4th at 1012 (quoting *Roach*, 2022 WL 2211529, at *2).

In sum, Coleman identifies nothing in the relevant factual and legal sources—her complaint and Ohio law—that justifies her equitable-tolling request. She thus has not met her burden to show that she qualifies for this doctrine. *See Saalim*, 97 F.4th at 1012; *Roach*, 2022 WL 2211529, at *2.

We affirm.