NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0373n.06

Case No. 24-5840

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| ANTHONY MARIO WYNN, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| CITY OF COVINGTON, KENTUCKY; | ) | KENTUCKY |
| DOUGLAS ULLRICH; JOHN MURPHY; | ) | |
| DANNY ELSBERND, in their individual and | ) | |
| official capacities as Police Officers for the | ) | |
| City of Covington, Kentucky; ROBERT | ) | OPINION |
| NADER, in his individual and official capacity | ) | |
| as Chief of the Covington Police Department; | ) | |
| DOES 1–50, | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before: SUTTON, Chief Judge; STRANCH and RITZ, Circuit Judges.

SUTTON, Chief Judge. After two difficult encounters with the City of Covington's police officers, Anthony Wynn sued the City and several officers for violating his rights under federal and state law. The district court granted the defendants' motion to dismiss some claims as untimely and granted their motion for summary judgment as to the rest. We affirm.

I.

Two encounters set the stage for the issues raised in this appeal.

*August 28, 2020.* On that day, according to Wynn, law enforcement stopped his car and asked him to exit the vehicle after they smelled marijuana. When Wynn declined to consent to a

search, officers Douglas Ullrich and Danny Elsbernd "aggressively" slammed him against a police car and hit him until he lost consciousness. R.1 ¶¶ 51–57. Wynn claims that the injuries from this encounter went untreated during the 40 days he remained in the county jail.

The stop resulted in the discovery of cocaine and firearms, prompting several federal criminal charges. Indictment, *United States v. Wynn*, No. 22-cr-51-DCR (E.D. Ky. Aug. 11, 2022), ECF No. 13. A jury found Wynn guilty on all counts. Jury Verdict, *Wynn*, No. 22-cr-51-DCR (E.D. Ky. Mar. 27, 2025), ECF No. 177.

*January 16, 2021.* In the second encounter, Officer John Murphy stopped a vehicle driven by one of Wynn's friends. Wynn sat in the backseat of the car. Officer Murphy asked everyone in the car for identification. Wynn questioned the officer's authority to ask for their names. When Officer Murphy explained that he could ask for their names to cite them for seatbelt violations, Wynn identified himself as Ronnie Wynn, his brother. Officer Murphy took the information back to his vehicle while other officers arrived.

Officer Murphy discovered that Wynn's brother had an outstanding traffic warrant. Believing one brother to be the other, Officer Murphy returned to the vehicle and ordered Wynn to get out of the car and place his hands on the vehicle.

Things escalated. After getting out of the car, Wynn began arguing and refused to put his hands on the car, leading Officer Murphy to push him against the car and to try to handcuff him. Wynn pulled away. "He's fighting," Officer Murphy yelled, before taking Wynn to the ground with the help of Officer Elsbernd. R.56-3 at 25:15–25:55. Video footage shows Officer Murphy and Wynn trying to grab each other's necks. Officer Murphy placed Wynn in a chokehold and released him after he turned Wynn over on the ground. Officer Murphy placed his knees and boot on Wynn's back and neck until Officers Elsbernd and Matthew Martin handcuffed him.

The officers turned to address the other passengers while Wynn waited by a police car. Wynn started yelling and pulled away in an attempt to get to his peers. Other law enforcement officers tackled Wynn and placed him in the back of a police vehicle. The encounter led to state charges for alcohol intoxication, disorderly conduct in the second degree, assault in the third degree, and resisting arrest. *See Commonwealth v. Wynn*, No. 21-F-00103, Kenton Circuit Court, Kenton County.

Wynn sued Officers Murphy, Ullrich, and Elsbernd as well as Police Chief Robert Nader and the City of Covington under 42 U.S.C § 1983 and state law. He alleged a variety of constitutional and state law tort claims.

The defendants moved to dismiss Wynn's claims arising from the August 2020 arrest on statute-of-limitations grounds. The district court granted the motion. After discovery on the remaining claims, the defendants moved for summary judgment, which the district court granted.

II.

On appeal, Wynn challenges three rulings: the district court's dismissal on timeliness grounds of his Fourth Amendment claims arising from the August 2020 arrest; its rejection of his Fourteenth Amendment unlawful discrimination claim arising from the January 2021 arrest; and its rejection of his Fifth Amendment self-incrimination claim arising from the January 2021 arrest.

Our standard of review varies with the type of motion at issue. As to the motion to dismiss, we ask whether Wynn affirmatively alleged "facts showing that [he] did not sue in time." *See Coleman v. Hamilton County. Bd. of County Comm'rs*, 130 F.4th 593, 607 (6th Cir. 2025) (quotation omitted). As to summary judgment, we ask whether a genuine dispute of material fact exists over the claim that the officers violated his constitutional rights. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Under either lens, we apply fresh review and construe

the facts in Wynn's favor. *See Jasinski v. Tyler*, 729 F.3d 531, 538 (6th Cir. 2013) (dismissal on the pleadings); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1041 (6th Cir. 1992) (summary judgment).

*Statute of limitations as to claims arising from August 2020 arrest.* Section 1983 claims borrow the personal-injury statute of limitations from the state in which they arose. *Zappone v. United States*, 870 F.3d 551, 559 (6th Cir. 2017). That means, as the parties agree, that Kentucky's one-year statute of limitations governs Wynn's § 1983 claim with respect to the August 2020 arrest. *See Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182–83 (6th Cir. 1990). That also means that Kentucky tolling rules apply to the claim, as long as the result is not inconsistent with federal law. *See Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 845 (6th Cir. 2015). While state law determines the length and nature of the statute of limitations, federal law determines when it begins to run. *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001). The limitations period for federal claims starts "when the plaintiff has a complete and present cause of action" that he can raise in court. *Rotkiske v. Klemm*, 589 U.S. 8, 13 (2019) (quotation omitted). We apply a "discovery rule" to such claims, meaning that the limitation period does not start until the claimant "discovered, or reasonably should have discovered, basic facts about [his] claim." *Reguli v. Russ*, 109 F.4th 874, 879, 882 (6th Cir. 2024) (per curiam).

Measured by these principles, Wynn's Fourth Amendment claim was untimely. In his complaint, Wynn alleged that several officers illegally searched him and used excessive force during the August 2020 traffic stop. At that moment, Wynn knew, or at least reasonably should have known, about his injury. *See Coleman*, 130 F.4th at 602. His complaint even mentions that he "complained of his injuries" during his detention immediately following the incident. R.1 ¶ 65.

But Wynn waited until November 2021, well over a year after he discovered his injuries, to file his complaint. That was too late.

Wynn protests that he did not know the relevant officers' identities in August 2020. That gap in knowledge, he says, should prompt us to equitably toll the statute of limitations. But having borrowed Kentucky's statute of limitations, we must also borrow its tolling rules. *Memphis Light Gas & Water Div.*, 777 F.3d at 845. And Kentucky law tells us that equitable tolling applies "when a plaintiff, despite all due diligence, . . . is unable to obtain vital information bearing on the existence of his claim." *Williams v. Hawkins*, 594 S.W.3d 189, 193 (Ky. 2020) (quotation omitted). Wynn is not that plaintiff. He offers nothing to reflect an attempt, diligent or otherwise, to identify the August 2020 officers during the fourteen months he sat on his claim. He did not request public records. He did not request a police report. So far as the complaint shows, Wynn did not make any inquiry at all of the police department or anyone else. *See Queensway Fin. Holdings Ltd. v. Cotton & Allen, P.S.C.*, 237 S.W.3d 141, 151 (Ky. 2007). All we know is that the "officers never personally identified themselves" during the incident, and that he failed to obtain their names until discovery. R.17 at 5. Those facts say nothing about whether Wynn tried to find that information.

Wynn adds that equitable tolling should apply because he became unconscious during the encounter and thus did not know the extent of his physical injuries at the time. He instead asks us to start the limitations clock when formal discovery began. But even if Wynn "discover[ed] the full extent" of his injuries later, "the discovery rule begins once a plaintiff learns of *an* injury from the defendant's conduct." *Reguli*, 109 F.4th at 883 (quotation omitted). Wynn knew that fact soon after the encounter.

That reality also explains why his lack of access to body camera footage does not toll the limitations period. Wynn knew about his own injuries and had reason to investigate them before he had any footage. The goal of obtaining additional evidence provides no explanation for postponing the limitations period. *See Bridgefield Cas. Ins. v. Yamaha Motor Mfg. Corp. of Am.*, 385 S.W.3d 430, 434 (Ky. Ct. App. 2012). Wynn does not allege, at all events, that he requested the body camera footage earlier.

Wynn claims that the district court should have let him amend his complaint to cure this deficiency. But an amendment cannot revive claims that the statute of limitations bars. Making matters harder still, Wynn has not told us the amendments he would make or explained how they would overcome his timeliness problem. No reversible error occurred.

*Equal protection claim arising from January 16 encounter.* Wynn claims that the defendants applied the chokehold during the January 16 encounter because he was black, not because he posed a physical threat. To establish a violation of the Equal Protection Clause, Wynn must show that defendants treated him "disparately as compared to similarly situated persons" in a way that "burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quotation omitted).

Wynn has not identified sufficient evidence to support his race discrimination claim. Before the district court, he made only the conclusory allegation that the Covington Police Department has a practice of using extreme force against black citizens but not others. Nothing in the record, however, backs that up. He does not cite any instances of the City providing more favorable treatment to white citizens in similar circumstances, *see Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004), or statistical evidence indicating that the City enforces laws differently depending on race, *see United States v. Saucedo*, 226 F.3d 782, 790 (6th Cir. 2000). He does not

identify any other case or complaint along these lines. And he does not identify any investigation or report that would support this claim. All he has is the reality that he and the officers belong to different races. That does not suffice. *See Saalim v. Walmart, Inc.*, 97 F.4th 995, 1010 (6th Cir. 2024).

Wynn pushes back based on Police Chief Nader's testimony that he could not recall having ever viewed body-camera footage of an officer applying a chokehold to a white citizen. But that testimony does not show race discrimination. One officer's inability to remember a specific use of force against a specific demographic does not provide evidence that the police department does not use such force in that setting. Even if it did, such a disparity would not imply that chokeholds were used "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). The district court correctly declined to accept Wynn's request for a speculative, not reasonable, inference of race discrimination. *See Audi AG v. D'Amato*, 469 F.3d 534, 545 (6th Cir. 2006).

Wynn complains that the defendants failed to raise this argument in their initial motion for summary judgment. Yes, the defendants did not raise this argument then. But no, that is not a problem, as the defendants' silence had a good explanation. Wynn, as it happens, did not raise a race-discrimination claim in his complaint, giving the defendants no reason to address it in the first round of briefing. Wynn referred just to his Fourteenth Amendment right "to be free from excessive and/or arbitrary and/or unreasonable force." R.1 ¶ 116. Only in the complaint's recitation of the facts did Wynn allege that the Covington police "have a pattern, and practice of discriminating against African Americans." R.1 ¶ 109. That brief mention of discrimination does not suffice to give the defendants "fair notice" of an equal protection claim "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted). Quite

7

understandably, then, the defendants waited until their reply brief to "reply to arguments"—a federal equal protection claim—first "made in the response brief." *Scottsdale Ins. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (quotation omitted). No error occurred.

*Self-incrimination claim arising from January 2020 encounter.* Wynn claims that the district court erred in granting summary judgment on his Fifth Amendment claim—that the defendants violated his right against self-incrimination by prompting his (false) self-identification during the January 16 traffic stop. We disagree.

The Fifth Amendment, generally speaking, does not prevent an officer from asking someone to identify himself. The guarantee prohibits "only compelled testimony that is incriminating." *Hiibel v. Sixth Jud. Dist. Ct.*, 542 U.S. 177, 189 (2004). Wynn offers nothing to explain "how the disclosure of his name" at a lawful traffic stop presented a "reasonable danger of incrimination." *Id.* at 189–90. In reality, Wynn never disclosed his own name at all. He pretended to be his brother when Officer Murphy requested identification. One cannot self-incriminate by pointing the finger at someone else. *Schmerber v. California*, 384 U.S. 757, 761 (1966) ("[T]he privilege protects an accused only from being compelled to testify against himself."). Because no one forced Wynn to incriminate himself, his Fifth Amendment claim necessarily fails.

We affirm.