NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0076n.06

Case No. 25-5377

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Feb 06, 2026

KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| CHRISTINE WILLIAMS, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| CORECIVIC OF TENNESSEE, LLC, et al., | ) | TENNESSEE |
| Defendant-Appellee. | ) | |
| | ) | OPINION |
| | ) | |

Before: CLAY; KETHLEDGE and BUSH, Circuit Judges.

**CLAY, Circuit Judge**. Sylvainus Cole died from a drug overdose while incarcerated at the Whiteville Correctional Facility, a private prison run by CoreCivic of Tennessee. His mother, Christine Williams, brought 42 U.S.C. § 1983 and Tennessee state law negligence claims against CoreCivic and individual corrections officers, alleging that severe understaffing at the prison led Cole to have unfettered access to drugs during his incarceration. She also alleges that Defendants failed to provide adequate medical aid in response to his overdose. She claims that the Defendants' actions led to Cole's death and amounted to deliberate indifference toward his health and safety in violation of his Eighth Amendment right to be free from "cruel and unusual punishments." U.S. Const. amend. VIII. The district court dismissed her suit, and we **AFFIRM** the district court's judgment.

## I.     BACKGROUND

This suit arises from the drug overdose death of Sylvainus Cole, III while he was incarcerated at the Whiteville Correctional Facility ("WCF"), a private Tennessee prison run by Defendants CoreCivic of Tennessee and CoreCivic, Inc.  Because this case comes to us on appeal of an order granting a motion to dismiss, "we recite the facts as they are alleged in the complaint." *Savel v. MetroHealth Sys.*, 96 F.4th 932, 937 (6th Cir. 2024).

The complaint describes the specific events leading to the overdose as follows.  At 5:19 pm on April 3, 2023, corrections officer Alexie Pruitt accompanied an inmate named Roderickus Tate to Cole's cell in the prison's KD pod.  Allegedly, Pruitt did not search Tate prior to securing him in Cole's cell, which allowed Tate to give Cole fentanyl.  At 6:50 pm, corrections officer Cherterica Neal entered the KD pod and heard yelling.  Neal approached Cole's cell and found him on the floor with Tate performing chest compressions.

Neal called in a medical code for a possible overdose, but did not administer any first aid to Cole while waiting for help to arrive.  When medical staff arrived three minutes later, Cole had no pulse and was not breathing.  They started CPR and administered the overdose-reversal drug Narcan, but Cole remained unresponsive.  Emergency medical services then transported him to a hospital where he was pronounced dead.

This was not Cole's first overdose.  On March 18, 2023, around two weeks prior, Cole had overdosed while housed in the JE pod at WCF.  He survived, and the prison rehoused him in the KD pod.  It also attempted to refer him to a withdrawal management unit ("WMU"), but the WMU denied him admittance.  The WMU referred Cole to WCF's Therapeutic Community program—a drug rehabilitation program—but he was placed on a waitlist, which, during the relevant time period, had 269 people on it.

Following Cole's death, Cole's mother, Christine Williams, was named Administrator ad Litem of Cole's estate. She brought this suit under 42 U.S.C. § 1983 against CoreCivic of Tennessee and CoreCivic Inc. and various WCF corrections officers, including Pruitt and Neal. She alleges that they acted with deliberate indifference toward Cole's health and safety in violation of his Eighth Amendment right to be free from "cruel and unusual punishments." U.S. Const. amend. VIII. She also alleges state law negligence claims against the Defendants.

She claims that CoreCivic has a custom of maintaining its staffing at levels insufficient to address and curb the flow of drugs in the prison, which led Cole to have "essentially unfettered access to illegal substances" during his incarceration. Am. Compl., R. 20, Page ID #365. In support of her understaffing contentions, Plaintiff attached and cited several prison audits performed by the state of Tennessee, which document WCF's staffing problems. A 2020 audit found that there was a 26 percent staff vacancy rate at WCF between October 2018 and January 2019 and that CoreCivic did not accurately report staff vacancies. That audit also determined that "low staffing coupled with frequent overtime impacted [WCF] management's ability to provide safe and secure facilities, especially in emergencies," and noted that WCF failed to perform mandatory procedures to protect inmates. *Id.* at Page ID #372. A 2023 audit found that the vacancy rate had increased to 42 percent.

She contends that the understaffing contributed to the proliferation of drugs throughout the prison in three primary ways. First, she alleges that drugs were smuggled into the prison by WCF staff members, and that staffing shortages led to "inadequate supervision of staff to prevent smuggling." *Id.* at Page ID #377. Second, she claims that the understaffing hindered WCF's ability to both detect drugs once they were already in the prison and to quickly respond to drug overdoses. On the evening of Cole's overdose, corrections officers were, according to Plaintiff,

supposed to perform security sweeps and head counts of the population every thirty minutes. However, due to understaffing, officers failed to perform any head counts or sweeps between Tate's 5:19 pm entry into Cole's cell and Neal's 6:50 pm discovery of Cole overdosing, which, Plaintiff contends, allowed Tate to give drugs to Cole and prevented Cole's overdose from being discovered in time to save his life. Third, she alleges that the understaffing contributed to the prison's inability to provide drug rehabilitation and prevention programs, thus preventing Cole from getting treatment after his first overdose.

After Plaintiff filed her complaint, Defendants moved to dismiss it, arguing that she failed to plead facts demonstrating that Cole suffered a constitutional deprivation caused by the Defendants. The district court agreed and dismissed Plaintiff's federal § 1983 claims. It also dismissed the Tennessee negligence claims for lack of supplemental jurisdiction.

## II. DISCUSSION

### A. Standard of Review

We review the district court's dismissal *de novo* and the complaint in the light most favorable to the Plaintiff. *Zakora v. Chrisman*, 44 F.4th 452, 464 (6th Cir. 2022). To survive a motion to dismiss, a complaint must contain enough factual content to permit a "reasonable inference" that the defendant is liable for the alleged constitutional tort. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

### B. Analysis

Plaintiff brings § 1983 claims against individual Defendants Pruitt, Neal, and other unnamed 'John Doe' corrections officers. She also alleges, under a theory of *Monell* liability, § 1983 claims against the CoreCivic Defendants. She claims that all Defendants acted with deliberate indifference towards Cole's health and safety, in violation of the Eighth Amendment,

which provides incarcerated people with the right to "humane conditions of confinement" and "adequate . . . medical care," and provides that prisons and prison staff must "'take reasonable measures to guarantee [inmate] safety.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

Plaintiff asserts claims for deliberate indifference based on failure-to-protect against all Defendants; she also asserts claims of deliberate indifference toward Cole's medical needs against the CoreCivic Defendants and Defendant Neal. For the reasons discussed below, we affirm the district court's dismissal of Plaintiff's complaint.

### 1. Failure-to-Protect Claim Against CoreCivic

Section 1983 permits suit against any "person" that "subjects" an individual to the "deprivation" of his constitutional right. 42 U.S.C. § 1983. For purposes of § 1983 liability under *Monell*, "person" includes private corporations that perform traditional state functions such as run a prison. *See Street v. Corrs. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). In her failure-to-protect claim against CoreCivic, Plaintiff alleges that CoreCivic's "custom and practice of severely understaffing its facilities, including the WCF, without regard to inmate safety," led to the spread of illegal drugs in WCF and ultimately Cole's overdose. Am. Compl., R. 20, Page ID #385.

Plaintiff may bring this § 1983 claim against CoreCivic, premised on a theory of *Monell* liability, so long as she alleges facts that "plausibly suggest" two elements: (1) that Cole suffered a "deprivation of a constitutional right"; and (2) that CoreCivic "is responsible for that violation." *Lawson v. Creely*, 137 F.4th 404, 420 (6th Cir. 2025) (citation omitted). We conclude that she has not sufficiently alleged a constitutional deprivation and affirm the district court's dismissal of this claim.

Plaintiff contends that Cole suffered a constitutional deprivation by virtue of the prison's deliberate indifference toward his risk of drug overdose. In *Zakora v. Chrisman*, we recognized that a prison may violate an incarcerated person's Eighth Amendment rights when officials are aware that a prison environment provides "unfettered access to drugs," but take insufficient steps to address the problem. 44 F.4th at 472, 474. "A viable claim has both an objective and a subjective prong." *Id.* at 468. To satisfy the objective prong, the plaintiff must demonstrate that the alleged mistreatment was objectively serious. *Id.* Also with respect to the objective prong, the plaintiff must show that the defendant's actions caused the objectively serious mistreatment. *See Caraway v. CoreCivic of Tenn., LLC*, 98 F.4th 679, 685 (6th Cir. 2024) ("[A] § 1983 plaintiff must plausibly show a causal connection between the defendant's act or omission and his injury."). To satisfy the subjective prong, the plaintiff must show that the prison knew of and disregarded the excessive risk to the inmate. *Zakora*, 44 F.4th at 472. We conclude that Plaintiff has failed to plausibly plead the objective prong.

Plaintiff pleads sufficient facts to make the plausible showing that Cole faced an objectively excessive risk of injury "due to the widespread presence of drugs [in the prison]." *Id.* at 470. The three prior inmate overdoses (including Cole's) and the 269-person waiting list for WCF's drug rehabilitation program plausibly allege that there was a rampant and unremedied drug problem at WCF and that the prison environment provided unfettered access to drugs. She also pleads extensive, specific facts demonstrating the prison's entrenched and severe understaffing problem. However, Plaintiff does not plead sufficient facts to plausibly allege that WCF's understaffing caused the risk of drug access and overdose.

"[T]he failure to adequately staff a prison—even a deliberate failure—is not itself a constitutional violation." *Caraway, 98 F.4th at 685.* So to allege an Eighth amendment violation,

the plaintiff must link the understaffing to the actual deprivation which, in this case, is the risk of overdose caused by unfettered access to drugs. This requires Plaintiff to plausibly allege that the understaffing caused his risk of overdose. *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 490–91 (6th Cir. 2020). Plaintiff's basic theory is that CoreCivic deliberately understaffed WCF to maximize its profits. She further alleges that the lack of manpower, in turn, caused Cole's injury by making it impossible for the prison to curb the flow of drugs inside the prison.

However, the allegations in Plaintiff's complaint going to the causal relationship between the understaffing and the proliferation of drugs are too generalized and conclusory to sustain a plausible claim. Plaintiff claims that the understaffing prevented the prison from performing sufficient security sweeps to detect drugs, from dedicating sufficient resources to investigate staff smuggling drugs into the prison, and from offering sufficient rehabilitative programs. All of these operational limitations, she claims, contributed to the drug problem inside the prison. But none of these conclusions about causation are supported by specific factual allegations that make a plausible preliminary showing that the causal relationship actually existed. Had Plaintiff included factual contentions demonstrating that, for instance, specific Tennessee laws or prison procedures required WCF to take certain steps to detect drugs, but that understaffing made it impossible for WCF to do so, directly leading to the presence of drugs in the prison, she may have plausibly alleged causation. However, she includes virtually no factual allegations like these and instead asks us to simply accept that the understaffing did cause these operational problems, and that the operational problems in turn contributed to the drug problem in the prison. This is not enough to plausibly plead the Eighth Amendment's objective prong.

Because we conclude that Plaintiff has failed to sufficiently plead the objective prong, we affirm the district court's dismissal of the failure-to-protect claim against CoreCivic without reaching the subjective prong analysis or the question of *Monell* liability.

**2. Deliberate Indifference to Medical Needs Claim Against CoreCivic**

Plaintiff also alleges that CoreCivic was deliberately indifferent to Cole's medical needs when he suffered his April 3 overdose. Like claims for failure-to-protect, prisoner claims for failure to provide adequate medical care have objective and subjective components. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). Plaintiff's allegations sufficiently plead the objective component, but not the subjective component.

The objective component requires the plaintiff to show that an incarcerated person has a "'sufficiently serious' medical need." *Id.* (citation omitted). "[A] medical need is objectively serious if it is . . . so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (citation omitted). We have "held that 'the objective prong is usually met' in overdose cases 'where death results from a failure to provide medical services, and there is evidence that lay persons . . . recognized the necessity for a doctor's attention." *Burwell v. City of Lansing*, 7 F.4th 456, 464 (6th Cir. 2021) (citations omitted). Plaintiff presented limited evidence about Cole's state during his overdose, but she alleges that other inmates were trying to alert guards that he was unwell and that he was discovered lying on the floor non-responsive; she also alleges that more prompt administration of Narcan would have saved him. Drawing all inferences in the Plaintiff's favor, this is enough to show that Cole had an objectively serious medical need.

For the subjective component, the plaintiff must show that the defendant had a "sufficiently culpable state of mind," *Blackmore*, 390 F.3d at 895-96, meaning that the defendant acted with

"deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 843 (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). This describes a state of mind more blameworthy than negligence, and requires that the official must know of an excessive risk of harm to an inmate's health and disregards that risk. *Id.* at 837. Plaintiff alleges that CoreCivic was deliberately indifferent to Cole's medical needs after he suffered his overdose because they failed to supply officers with Narcan, which resulted in delayed administration of the drug to Cole. The complaint also appears to suggest that the failure to perform cell checks every thirty minutes on the evening of Cole's overdose also amounts to deliberate indifference.

This is not enough to satisfy the subjective component. First, assuming that guards were required to perform checks every 30 minutes, the complaint contains no allegations that officials failed to perform cell checks for thirty minutes *after* Cole developed a serious medical need. Indeed, the complaint indicates the opposite, that a corrections officer came to investigate as soon as other inmates alerted him to Cole's condition. Plaintiff's argument about the failure to supply Narcan also falls short. There is more than one way to treat a drug overdose, and we can find no authority indicating that failure to supply Narcan is, itself, deliberately indifferent. *See Graham v. County of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004) ("[T]he fact that alternative procedures might have better addressed [a prisoner's] particular needs does not show that the [County was] deliberately indifferent to his medical needs.'" (citation and footnote omitted)). Indeed, Officer Neal called for the medical team immediately after finding Cole on the floor, indicating that WCF had procedures in place for prompt responses to overdoses. This does not show deliberate indifference toward Cole's medical needs.

Accordingly, Plaintiff has not alleged sufficient facts to sustain a plausible claim for deliberate indifference toward Cole's medical needs, and we affirm the district court's dismissal of this claim against the CoreCivic Defendants without reaching the question of *Monell* liability.

### 3. Claims Against Individual Defendants

Plaintiff also brings several § 1983 claims against individual WCF corrections officers. We affirm the dismissal of all of these claims.

### a. Defendant Pruitt

Plaintiff asserts a deliberate indifference claim against Defendant Pruitt for failure to protect. She alleges the Pruitt "knew that due to the widespread availability of drugs at the WCF that Mr. Tate was likely to possess drugs and bring them to [Cole] if he was not properly search[ed] before being returned to his cell" and that Pruitt's failure to search Mr. Tate thus constituted deliberate indifference. Am. Compl., R. 20, Page ID #369, 371, 381, 384.

However, it does not follow from the allegation of the widespread availability of drugs at WCF that Tate was personally likely to possess drugs or bring them to Cole, or that Pruitt himself had any awareness that Tate planned to give drugs to Cole. The complaint also contains no additional allegations indicating that Tate himself or the circumstances surrounding his placement in Cole's cell presented an objective or subjective risk to Cole's safety. Accordingly, Plaintiff's deliberate indifference claim against Pruitt is "implausible, attenuated," and "unsubstantial," and should be dismissed. *Apple v. Glenn,* 183 F.3d 477, 479 (6th Cir. 1999).

### b. Defendant Neal

Plaintiff also asserts claims for failure to protect and deliberate indifference toward medical needs against Defendant Neal. As to the failure-to-protect claim, she asserts that Neal knew (1) "that [Cole] would likely obtain drugs if not monitored and supervised through regular sweeps and

cell checks," and (2) "that he would likely be at serious risk of death if he was not monitored and supervised through regular sweeps and cell checks to respond to any overdose that would occur." Am. Compl., R.20 at Page ID #382. There are simply no facts in the complaint substantiating these allegations or showing that Neal personally had notice of the risk of overdose death, as is required to sustain a failure-to-protect claim. *Zakora*, 44 F.4th at 472.

As to the claim for failure to provide adequate medical care, Plaintiff argues that Neal was deliberately indifferent toward Cole's medical needs by failing to "provid[e] Narcan or any other medical care" to Cole while he was overdosing. Am. Compl., R.20 at Page ID #384. This claim is contradicted by the facts in Plaintiffs complaint. Neal immediately called a code after finding Cole in peril, and a medical team arrived three minutes later. Even if Neal did not react in the most reasonable manner, Neal's summoning of medical staff indicates that Neal did not disregard Cole's medical needs. This behavior does not rise to the level of "wantonness" required to state a deliberate indifference toward medical needs claim. *Martin v. Bristol*, 42 F.3d 1389 (6th Cir. 1994); *cf. Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) ("[W]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference . . . but merely a degree of incompetence which does not rise to the level of a constitutional violation." (citation omitted)).

### c.  John Does

Plaintiff also brought claims against various "John Does" whom she "believed . . . participated in, facilitated, or otherwise contributed to the wrongful death and violations alleged" in the complaint. Am. Compl., R. 20, Page ID #379. The district court dismissed these claims, finding that the 120-day time limit for service of process had expired without Plaintiff identifying or serving these defendants. *See* Fed. R. Civ. P. 4(m). We detect no error in this disposition. And

in any event, Plaintiff does not appear to raise any argument as to the John Does on appeal. *See Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998) (Issues "not raised on appeal[] are considered abandoned."). We thus affirm the dismissal of the claims against the John Does.

### 4. State Law Claims

Because we affirm the district court's dismissal of all of Plaintiff's federal claims, we also affirm the district court's dismissal of Plaintiff's state law claim for lack of supplemental jurisdiction.

### III. Conclusion

For the foregoing reasons, we **AFFIRM** the district court's judgment dismissing Plaintiff's suit.