NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0131n.06

No. 25-5553

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Mar 12, 2026
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| PAMELA LOWRANCE, individually and as Wrongful Death Representative of Danny Lowrance, | ) ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| v. | ) ) ) | |
| CORECIVIC, INC., dba Trousdale Turner Correctional Center; TROUSDALE COUNTY, TENNESSEE, a Tennessee municipality; WARDEN MARTIN FRINK, in his individual capacity; MISTY ROBERSON, FNP; SARA OWEN, M.D.; CORRECTIONAL MEDICINE ASSOCIATES, PC, | ) ) ) ) ) ) ) ) ) | OPINION |
| Defendants-Appellees. | ) | |

Before: CLAY, GIBBONS, and HERMANDORFER, Circuit Judges.

HERMANDORFER, Circuit Judge. Danny Lowrance died after suffering a stroke while incarcerated at the Trousdale Turner Correctional Facility. Danny's mother, Pamela, contends that the stroke was caused by sepsis resulting from Danny's untreated dental issues. She sued various individuals and entities who worked at or managed the Facility, alleging that they violated the Eighth Amendment and state law by failing to provide Danny with adequate medical care. The district court dismissed Pamela's complaint for failure to state a federal claim and declined to exercise supplemental jurisdiction over her state-law claims. We affirm.

I

In June 2022, Danny Lowrance was incarcerated at Riverbend Maximum Security Institution in Nashville, Tennessee. While there, Danny sought care from prison medical staff for "multiple missing and broken teeth, and associated pain." Complaint, R.34, PageID 197.[1] Prison staff "placed a referral to dental" to treat Danny's dental issues. *Id.* But for an unknown reason, Danny was transferred to the Trousdale Turner Correctional Facility "prior to seeing dental" at Riverbend. *Id.*

On July 25, 2022, Danny "received his medical intake from" Trousdale Turner Correctional Facility. *Id.* at PageID 198. That intake "would have included his referral" for dental care. *Id.* Two days later, Facility Nurse Misty Roberson "reviewed" Danny's "intake chart" and "indicated that" Danny "would be scheduled" for treatment "as per protocol." *Id.* at PageID 198-99. But she "failed to appropriately refer him to dental for treatment." *Id.* at PageID 201. And "no medical record exists to indicate that" Danny "was scheduled for or seen by a dentist or dental assistant at" the Facility. *Id.* at PageID 199.

The complaint contains no allegations about what happened over the next seven months. Instead, it flashes forward to April 4, 2023, when Danny filed a "sick call request" complaining of chest pain, breathing problems, an inability to eat, and vomiting. *Id.* Although Danny's sick-call slip is stamped as "[r]eceived" at "2300" hours, medical "staff failed to timely process" it. *Id.* at PageID 199-200. Around noon the next day, "a medical code was called" for Danny, who "was transferred to the Vanderbilt Medical Center." *Id.* at PageID 200. Danny was admitted to the

---

[1] Pamela repeatedly refers to Danny's tooth "abscess" and dental "infection" in her briefing. *See, e.g.*, Lowrance Br. 3. But the complaint does not use those terms and contains no details about Danny's dental problems other than the above-mentioned allegation.

2

Medical Center to treat a stroke and "serious clinical concerns for sepsis." *Id.* The "sepsis," Pamela alleged, "was a result of the untreated dental injuries." *Id.* Danny never recovered. He died on April 10, 2023.

Seven months later, Pamela sued several individuals and entities connected with the Facility under 42 U.S.C. § 1983. As relevant here, the defendants include Nurse Roberson, CoreCivic (the owner and operator of the Facility), Correctional Medicine Associates (the Facility's medical provider) and Trousdale County (which contracted management of the Facility to CoreCivic). Pamela alleged that the defendants violated Danny's rights under the Eighth Amendment, the Fourteenth Amendment, and state law by failing to treat Danny's dental issues and failing to adequately respond to the sick-call request. She also alleged that the entities' policies or customs caused the Eighth Amendment violation. As for CoreCivic specifically, Pamela's theory was that its failure to adequately staff the Facility caused Danny's death. In support, her complaint cited audits and similar reports showing staffing issues at the Facility and CoreCivic's other prisons.

The district court dismissed Pamela's complaint. It concluded that Pamela failed to allege a plausible Eighth Amendment violation and so dismissed the federal claims under Federal Rule of Civil Procedure 12(b)(6). It then declined to exercise supplemental jurisdiction and dismissed the state-law claims without prejudice. Pamela timely appealed.

II

We review the dismissal of Pamela's complaint de novo. *Coleman v. Hamilton County Bd. of County Comm'rs*, 130 F.4th 593, 598 (6th Cir. 2025). When doing so, we construe the complaint's factual allegations in the light most favorable to the plaintiff. *Caraway v. CoreCivic of Tenn., LLC*, 98 F.4th 679, 683 (6th Cir. 2024). But we disregard legal conclusions, "[t]hreadbare

3

recitals of the elements of a cause of action," and "conclusory statements." *Id.* (citation omitted). "To survive a motion to dismiss, a complaint must contain enough factual content to permit a reasonable inference that the defendant is liable for the alleged" misconduct. *Id.* (citation omitted).

A

We begin with Pamela's Eighth Amendment claim against Nurse Roberson. Pamela alleged that Nurse Roberson was deliberately indifferent to Danny's medical needs by (1) failing to treat his dental problems and (2) failing to respond to the April 4 sick-call request. But in her reply brief, Pamela stated that "Roberson's liability is unconnected from the sick call on April 4, and her failure to obtain necessary treatment for the tooth is sufficient for a finding of liability." Reply Br. 7. We therefore address only the deliberate-indifference claim premised on Danny's dental problems. As to that claim, dismissal was proper.

The Eighth Amendment bars the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. In the healthcare context, prison officials run afoul of the Eighth Amendment if they are "deliberately indifferent" to a prisoner's "serious medical needs." *Phillips v. Tangilag*, 14 F.4th 524, 532 (6th Cir. 2021). The deliberate-indifference test has both an objective and subjective component. *Id.* at 534. Objectively, the prisoner's medical need must be "sufficiently serious." *Id.* "Only if a prisoner proves this objective element must courts consider the second (subjective) part of the deliberate-indifference test." *Id.* at 535. Subjectively, the prison official must "know of and disregard the serious medical need." *Id.* That in turn requires an official to (1) "know of the facts that show the serious medical need," (2) "personally conclude that this need exists," and then (3) "consciously disregard the need." *Id.* (citation modified). Negligence or malpractice is not actionable under the Eighth Amendment. *Durham v. Nu'Man*, 97 F.3d 862, 868 (6th Cir. 1996).

The allegations in the complaint do not clear the "high bar" of pleading conscious disregard of a serious medical need. *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018). The complaint alleges that Nurse Roberson reviewed Danny's "intake chart," which "would have included his referral for [a] dental examination and treatment for his tooth pain and broken and missing teeth." Complaint, R.34, PageID 198. So Nurse Roberson "kn[ew] of the facts that show the serious medical need." *Phillips*, 14 F.4th at 535. But the allegations do not support that Nurse Roberson "consciously disregard[ed] th[at] need." *Id.* She "indicated that" Danny "would be scheduled" for treatment "as per protocol." Complaint, R.34, PageID 199. And although the complaint indicates that Danny was never scheduled for treatment, that alone does not suggest deliberate indifference. The complaint contains no facts that plausibly allege that Nurse Roberson "disregarded a known or obvious consequence of [her] actions" in failing to refer him. *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410 (1997). Pamela's allegations suggest that, at most, Nurse Roberson ultimately failed to ensure that the Facility's protocol for scheduling inmates for treatment was followed. But "the failure to follow internal policies, without more," does not "constitute deliberate indifference." *Winkler v. Madison County*, 893 F.3d 877, 891 (6th Cir. 2018).

That is particularly true here because the complaint alleges no other contact between Nurse Roberson and Danny. The complaint does not allege, for example, that Nurse Roberson "was ever aware that the treatment was not being implemented." *Richmond v. Huq*, 885 F.3d 928, 941 (6th Cir. 2018). Nor are there allegations that Nurse Roberson intentionally declined to provide follow-up treatment despite knowing it was overdue. Also missing are allegations that Nurse Roberson denied care for non-medical reasons, such as a belief that Danny was "faking it." *See Jones v. Muskegon County*, 625 F.3d 935, 944 (6th Cir. 2010). Without such allegations, Nurse Roberson's

"lone contact" with Danny "may support a claim for professional negligence," but not "deliberate indifference." *Reilly v. Vadlamudi*, 680 F.3d 617, 625 (6th Cir. 2012).

Indeed, Pamela alleges that Nurse Roberson was "deliberately indifferent" because she "deviated from the standard of care in a correctional facility." Complaint, R.34, PageID 200. We have explained that an assertion that a healthcare provider deviated from the "standard of care" suggests "negligen[ce]" rather than "deliberate indifference." *Burgess v. Fischer*, 735 F.3d 462, 477 (6th Cir. 2013); *see also Nallani v. Wayne County*, 665 F. App'x 498, 508 (6th Cir. 2016). We have even indicated as much in the context of a doctor's failure to timely order medical treatment. *See Santiago v. Ringle*, 734 F.3d 585, 593 (6th Cir. 2013) ("[T]he mere existence of delay in receiving treatment is not enough for a jury to find deliberate indifference.").

Pamela argues in response that Nurse Roberson "failed to act upon the order in" Danny's intake file and so "neglect[ed]" his "known medical needs." Lowrance Br. 12. But as discussed, a "mere failure to provide adequate medical care to a prisoner," without more, "will not violate the Eighth Amendment" because it does not amount to the "wanton infliction of unnecessary pain." *Rhinehart*, 894 F.3d at 737 (citation omitted). And we have faulted plaintiffs where, as here, they offer nothing to suggest that a doctor "was responsible for scheduling" an inmate's "appointments" with other medical providers or had been "made aware of any alleged scheduling delay and then failed to act." *Runkle v. Kemen*, 529 F. App'x 418, 425 (6th Cir. 2013).

The cases on which Pamela relies do not counsel a different outcome. In *Flanory v. Bonn*, the defendants failed to provide the plaintiff with dental-hygiene items for nearly a year despite his repeated requests. 604 F.3d 249, 251-52, 256 (6th Cir. 2010). So too in *McCarthy v. Place*, where the plaintiff made repeated requests for a tooth filling. 313 F. App'x 810, 811, 816 (6th Cir. 2008). And in *Terrance v. Northville Regional Psychiatric Hospital*, the defendants either ignored

6

the inmate's preexisting medical risks and failed to respond appropriately when they were informed that those risks manifested in a medical emergency, or else committed a conscious act that they knew would likely heighten the inmate's risk of death. 286 F.3d 834, 844-46 (6th Cir. 2002). Each involved more than a defendant's isolated failure to follow up about a patient's treatment, which is all Pamela has alleged regarding Nurse Roberson.

At bottom, the allegations suggest that Nurse Roberson may have committed negligence or malpractice. But they do not adequately plead that Nurse Robinson was deliberately indifferent to Danny's serious medical needs.

B

Next, we consider Pamela's claims against Trousdale County, Correctional Medicine Associates, and CoreCivic under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). To state a claim, Pamela must plausibly allege that Danny's "injuries arose from an unconstitutional act" and "then connect that act" to a defendant's "policy or custom." *Coleman*, 130 F.4th at 599 (citation omitted). The relevant "policy or custom" must have "caused the plaintiff's injury," meaning that "a direct causal link" must "exist[] between the policy and the" alleged constitutional violation—here, deliberate indifference to Danny's serious medical needs. *Jones*, 625 F.3d at 946 (citation omitted). Municipal and corporate entities, however, "cannot be held liable on the basis of respondeat superior or vicarious liability." *Rouster v. County of Saginaw*, 749 F.3d 437, 453 (6th Cir. 2014).

As a threshold matter, Pamela's *Monell* claims fail because she has not plausibly alleged an underlying constitutional violation. *See Caraway*, 98 F.4th at 687. As to the individual defendants, Pamela appeals only the dismissal of the claim against Nurse Roberson, and that challenge lacks merit. "Without an underlying unconstitutional act," Pamela's claims against the

7

entities "under § 1983 must also fail." *Baynes v. Cleland*, 799 F.3d 600, 622 (6th Cir. 2015). But even setting that aside, Pamela's allegations against the County, Correctional Medicine Associates, and CoreCivic are inadequate to state a valid claim.

*Trousdale County*. Start with the claim against Trousdale County. Pamela alleged only that "Trousdale County [was] liable for the policies, practices, and customs of CoreCivic" at the Trousdale Turner Correctional Facility because "CoreCivic was fully subcontracted by Trousdale County to run" the Facility. Complaint, R.34, PageID 209. But that amounts to an allegation that the County was liable "for an injury inflicted solely by its employees or agents"—something that § 1983 does not permit. *Franklin v. Franklin County*, 115 F.4th 461, 470 (6th Cir. 2024) (citation omitted).

On appeal, Pamela suggests in passing that the County is liable "under the non-delegable duty doctrine." Lowrance Br. 10. But she forfeited that argument by failing to raise it before the district court and waived it here by referring to it only "in a perfunctory manner." *Buetenmiller v. Macomb County Jail*, 53 F.4th 939, 946-47 (6th Cir. 2022) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)). So Pamela's § 1983 claim against the County fails.

*Correctional Medicine Associates*. The § 1983 claim against Correctional Medicine Associates is also deficient. Pamela did not plausibly allege that Correctional Medicine Associates has "a policy or custom that caused a violation of" Danny's "constitutional right to adequate medical care." *Winkler*, 893 F.3d at 901. The complaint alleges only that Correctional Medicine Associates "continued the practice of withholding medical care in order to maximize profits" and "implemented customs and policies" that "directly and proximately caused" the "constitutional rights violations resulting in" Danny's "death." Complaint, R.34, PageID 207-08, 211. But those

8

"conclusory statements" and "[t]hreadbare recitals of the elements" "won't do." *Caraway*, 98 F.4th at 683 (citation modified).

*CoreCivic*. We likewise affirm the dismissal of Pamela's § 1983 claim against CoreCivic. The complaint asserts that "CoreCivic has adopted a policy of withholding medical care from inmates in order to maximize profits." Complaint, R.34, PageID 207. But like the profits-based allegation just discussed, "[t]hat kind of conclusory statement, unaccompanied by factual support," does not give rise to a plausible claim. *Caraway*, 98 F.4th at 686.

The complaint also alleges that CoreCivic had a pattern of understaffing its prisons, including the Trousdale Turner Correctional Facility, and provides several examples in support. But even assuming those allegations establish a policy or custom, Pamela has failed to "connect" that policy or custom to Danny's inadequate dental care and eventual medical emergency. *Coleman*, 130 F.4th at 599 (citation omitted). That disconnect arises from the complaint's failure to allege facts "supporting the conclusion that the defendants' understaffing caused" Danny's inadequate dental care or medical emergency. *Caraway*, 98 F.4th at 685-86. The complaint inches closer by alleging that "[s]taffing shortages were identified as having the possibility of preventing transportation to and from medical." Complaint, R.34, PageID 203. But the "mere possibility that understaffing caused" the inadequate treatment is not enough to make out a plausible claim. *Caraway*, 98 F.4th at 686 (citation omitted).

Nor does the allegation that "a former guard" at the Facility "testified" that she "witness[ed] two inmates die from medical neglect" solve the problem. Complaint, R.34, PageID 207. That CoreCivic may have ignored the medical needs of other inmates years earlier does not establish a "direct causal link" between CoreCivic's understaffing and the denial of care for Danny's serious medical needs. *Baynes*, 799 F.3d at 621-22.

9

Pamela's allegation that a 2017 audit found that the Facility failed to instruct prisoners on how to obtain medical care and performed no intake screening for some inmates fares no better. The audit's findings predate Danny's incarceration at the Facility by nearly five years. And in any event, Pamela alleged that Danny knew how to obtain medical care: Danny underwent an intake screening and later filed a sick-call request. So any failure to perform intake screenings or instruct inmates about how to obtain medical care cannot have caused Danny's inadequate dental care or medical emergency.

All that is left is the complaint's allegations that CoreCivic "engages in understaffing" and "knew that understaffing was rampant." Complaint, R.34, PageID 204, 207. But those allegations do not suggest Danny's inadequate dental care or medical emergency occurred "*because* of" CoreCivic's understaffing. *Baynes*, 799 F.3d at 621 (citation omitted).

Pamela's primary counterargument is that the district court misapplied our decision in *Caraway*. But that case is directly on point. There, as here, the plaintiff relied primarily on "generalized allegations" that CoreCivic's "understaffing" caused a constitutional violation. *Caraway*, 98 F.4th at 686. And there, as here, the complaint was missing "some factual basis showing a causal link" between the understaffing and the alleged constitutional violation. *Id.* (citation modified). Accordingly, the complaint in *Caraway* failed to state a claim. *Id.* The district court did not err by reasoning similarly here.

C

That leaves Pamela's state-law claims, which the district court dismissed without prejudice. On appeal, Pamela seeks reinstatement of the state-law claims in the event we reverse the district court's dismissal of her federal claims. Because we affirm dismissal of the federal-law claims, Pamela's contingent argument for reinstating the state-law claims fails.

10

\*     \*     \*

We affirm the judgment of the district court.